

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

AB:CMP/RJN
F.#2008R00530

*271 Cadman Plaza East*

*Brooklyn, New York 11201*

December 9, 2010

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:  United States v. John Franzese
             Criminal Docket No. 08-240 (S-5) (BMC)

Dear Judge Cogan:

       The government submits this letter in opposition to the defendant John "Sonny" Franzese's letter, dated November 23, 2010, objecting to the Presentence Investigation Report ("PSR"), ("PSR Objections"), and in opposition to his sentencing memorandum, dated December 3, 2010 ("Sent. Mem."), seeking a non-Guidelines sentence based on his age, health problems and purported rehabilitation.  Franzese's sentencing is scheduled for December 17, 2010.

I.    Background

       On July 7, 2010, after a jury trial, Franzese was convicted of the following counts in the above-referenced superseding indictment: Count One (racketeering conspiracy), Count Two (extortionate collection of credit conspiracy as to Joe Toursto, with co-defendant Joseph DiGorga), Counts Six and Seven (conspiracy to extort the Hustler and Penthouse clubs, with DiGorga), and Counts Eleven through Fourteen (extortionate extension/collection of credit and conspiracy to commit the same as to Vincent Michaels, with co-defendant Christopher Curanovic).  The evidence adduced at trial consisted primarily of Franzese's own admissions on consensual recordings, described in further detail below.  Additional evidence against Franzese included extensive surveillance photographs and the testimony of John Franzese, Jr. and Special Agent Vincent D'Agostino of the Federal Bureau of Investigation, among other witnesses.

II.  <u>The Presentence Investigation Report</u>

The PSR accurately calculated a total offense level of 32 and a criminal history category of III (although, as described below, that criminal history category significantly under-represents the seriousness of his criminal history and warrants an upward departure pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 4A1.3).  Thus, the PSR properly found the applicable Guidelines range to be 151 to 188 months.  Franzese, however, objects to the four-point role enhancement applied pursuant to U.S.S.G. § 3B1.1(a) and to the two-point obstruction of justice enhancement applied pursuant to U.S.S.G. § 3C1.1.  These objections are without merit and should be rejected.

  A. <u>An Aggravating Role Adjustment is Appropriate</u>

The trial evidence amply demonstrated that Franzese was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  U.S.S.G. § 3B1.1(a).  The defendant's position as the "official underboss" of the Colombo organized crime family, a position of which he repeatedly reminded others, is sufficient to warrant the adjustment.  <u>See</u> <u>United States v. Gigante</u>, 94 F.3d 53, 57 (2d Cir. 1996) (upholding role enhancement based on defendants' "status within their respective crime families" as members of the administrations of the Colombo and Genovese crime families).  As expert witness John Carillo testified at trial, the underboss of an organized crime family is "second in command in the family, usually by the choosing of the boss."  Trial Tr. at 86.  The underboss is part of the family administration, which consists of the boss, the underboss and the consigliere:

> They set policy for the family.  They decide who becomes inducted members into the family.  They also decide as the administration when to mete out punishment or discipline, which would be anything from shelving an inducted member to the extreme of murdering a member of the family.  That can only be decided by the administration.

Trial Tr. at 86.

Franzese attempts to minimize his role by arguing that he was merely a "figurehead" who engaged in "pathetic boasting."[1] PSR Objections at 2. This argument, however, is belied by the trial record, which is replete with evidence that Franzese was an "organizer or leader," particularly with respect to the extortion charges. For example, Franzese instructed DiGorga on how to execute the extortion plan at the Penthouse Club; as Franzese admitted in a consensual recording, "I told 'em go in there and fucking lay the ground with 'em." PSR ¶ 47. DiGorga later told Franzese, "the thing is, it's like you used to tell me, you can't go in and bang their brains out." PSR ¶ 49. Likewise, in the Beauty by Andre extortion, Franzese directed Colombo family captain Michael Catapano to use violence if he was unable to collect from the victims: "If he don't give it to you, leave 'em on the floor." PSR ¶ 59. As another example, Catapano held the money he received as a result of the the Cujini Due extortion for Franzese while Franzese was incarcerated. Trial Tr. at 371 (John Franzese, Jr. Testimony); Government Exhibit ("GX") 106 (May 9, 2005 recording of Catapano). This evidence reveals how Franzese led lower-ranking members and associates of the Colombo family in their shakedowns.

The trial record also demonstrated Franzese's leadership position vis-a-vis Curanovic. For example, in the Vincent Michaels loansharking scheme, Curanovic told cooperating witness Gaetano Fatato, "I only wanna do it if he's [Franzese] gonna do it." GX 211D (October 13, 2006 recording). Indeed, Curanovic told Neza that Franzese was the "highest person" they would meet in the Colombo family (Trial Tr. at 1004), and they planned to kick up the proceeds of their armed robbery scheme to Franzese. Trial Tr. at 998 (Neza testimony that they planned to give "one-fourth" of the proceeds to Franzese). This practice is consistent with the structure of an organized crime family, where "the money always flows up" to those in leadership positions, like Franzese. Trial Tr. at 92 (Carillo testimony).

Notwithstanding this extensive evidence of Franzese's leadership role in the Colombo family, Franzese cites United States v. Gotti, 459 F.3d 296 (2d Cir. 2006) (cited at PSR Objections at 2) for support. In Gotti however, the Second Circuit declined to evaluate the factors considered by the district court in deciding not to impose a four-point role adjustment. Indeed, the Second Circuit hinted that it may have

---

[1] This is precisely the same argument that Franzese advanced at length at trial, to no avail. See, e.g., Trial Tr. at 1803-1812 (defense summation).

3

decided differently if it had engaged in a de novo review of the facts. Gotti, 459 F.3d at 349 ("Regardless of whether we would have reached the same decision were a de novo standard to apply, we do not believe that the district court committed clear error here."). Thus, nothing in the Gotti decision prohibits the application of a role adjustment to the underboss of an organized crime family. Moreover, there is no legal requirement that a defendant "amass substantial illegal profits" or receive a "larger share of the fruits of the crime," as Franzese suggests, (PSR Objections at 2) in order to merit an organizer or leader role adjustment.

> B. An Obstruction of Justice Enhancement is Warranted

An obstruction of justice enhancement is also warranted as to Franzese. The government is prepared to present evidence of Franzese's request to have his son killed when he learned that his son was cooperating with the government against members and associates of the Colombo family. PSR § 74.

### III. A Guidelines Sentence or Upward Departure is Appropriate

In sentencing co-defendant Orlando Spado on September 17, 2010, Your Honor commented:

> Sometimes you have to put someone in jail for what you recognize is going to be the rest of their lives because they are just a depraved person and there's no prospect of rehabilitation or contribution.

Spado Sentencing Tr. at 20. As demonstrated by his extraordinarily long and violent criminal history, Franzese has shown himself to be a "depraved person" with "no prospect of rehabilitation or contribution." Accordingly, the government respectfully submits that, at a minimum, a Guidelines sentence is appropriate. Indeed, the criminal history category calculated in the PSR (Category III), while technically correct, "substantially under-represents the seriousness of the defendant's criminal history," based on "prior similar adult criminal conduct not resulting in a criminal conviction." U.S.S.G. §§ 4A1.3(a)(1) and 4A1.3(a)(2)(E).

Franzese has devoted his long life to crime, both before and during his rise to power in the Colombo family. From a very young age, he has engaged in relentless and increasingly brutal violence, starting with an assault arrest at the age of 19 in 1938, then escalating to the rape of a waitress in a garage in

1947 and armed bank robbery in 1967. PSR ¶¶ 131, 136, 138. Franzese's violent nature manifested itself in other aspects of his life as well. In 1942 – in the midst of World War II – he was discharged from the United States Army because he displayed "homicidal tendencies." PSR ¶ 166. In 1945, his first wife obtained a divorce on the grounds of mental cruelty, alleging that Franzese "habitually threatened to disfigure her with a knife." PSR ¶ 155.

This penchant for violence and depravity culminated in literally countless murders; even Franzese struggled to keep track of them all, telling Fatato in 2006 that he had "killed a lot of guys . . . you're not talking about four, five, six, ten [murders]," and that a newspaper had once reported that he was responsible for hundreds of murders. In 1966, Franzese was arrested for murdering a bookmaking rival and dumping his body in Jamaica Bay with cement blocks chained to his feet. PSR ¶ 149. Franzese was acquitted of this murder and has not been charged with any other murders, which is unsurprising given his meticulous care in disposing of his victims' corpses. On April 18, 2006, Franzese suggested to Fatato that if they had to dispose of a body, they could do so by, among other things, dismembering the corpse in a kiddie pool and drying the severed body parts in a microwave before stuffing the parts in a commercial-grade garbage disposal. On October 13, 2006, Franzese advised Fatato that if they were patient when getting rid of a murder victim, they would have nothing to worry about:

> Today, you can't have a body no more . . .
> It's better to take that half-an-hour, an
> hour, to get rid of the body than it is just
> to leave the body in the street.

Such evidence, while not admitted at trial, is appropriate for consideration as relevant conduct at sentencing and demonstrates the inadequacy of his criminal history category.

Despite after living a life of crime for over seven decades, during which his primary loyalty lay not with his own family but with the Colombo family, Franzese now attempts to depict himself as a new man who cares for nothing more than spending time with his great-granddaughter. Franzese and the family members who submitted letters on his behalf describe the 18 months he spent on pretrial release as transformative, an idyll that enabled him to find peace and become a law-abiding citizen after escaping from his "sociopathic wife." Sent. Mem. at 2. This and other comments about his wife and their marital "jail," as well as his relentless personal attacks on his son

5

John Franzese, Jr. at trial, reveal Franzese's total inability to accept responsibility.  For Franzese, his legal troubles should be blamed on his wife or his son – on anybody but him.

In considering the 18 U.S.C. § 3553(a) balancing test, the nature and circumstances of the offenses and the violent criminal history and characteristics of the defendant far outweigh the factors posited by Franzese, such as his age and various ailments.[2]  In sum, Franzese has "no prospect of rehabilitation or contribution."  Spado Sentencing Tr. at 20.  The PSR makes plain that Franzese has never held a legitimate job in his life.  Having denied so many of his victims the opportunity to live out their lives safely and securely with their families, Franzese should not be permitted to "thrive" at home and "live out his remaining few years or months with his family," as he now seeks to do.  Sent. Mem. at 5.

IV. Conclusion

For these reasons, the government respectfully submits that a sentence at the high end of the advisory Guidelines range of 151 to 188 months, as calculated by the Probation Department, or a sentence above that range based on the inadequacy of Franzese's criminal history category, is appropriate in this case.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By: /s/ Cristina M. Posa
Cristina M. Posa
Rachel J. Nash
Assistant U.S. Attorneys

cc: Richard B. Lind, Esq. (By ECF)

---

[2]  A defendant's physical condition is not ordinarily relevant to a sentencing determination, except in cases of "extraordinary physical impairment." U.S.S.G. § 5H1.4. Franzese's health problems are far from extraordinary. Indeed, in one of Franzese's letters of support, his grandson declared, "Believe me, if anyone I know will live well into their one-hundreds...It is my grandfather!"