

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

CMP/RJN
F.#2008R00530

*271 Cadman Plaza East*

*Brooklyn, New York 11201*

December 21, 2010

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. John Franzese
            Criminal Docket No. 08-240 (S-5) (BMC)

Dear Judge Cogan:

      Pursuant to the Court's Order on December 17, 2010, the government respectfully submits this letter to address the individual factual objections to the defendant's Presentence Report, dated November 3, 2010 ("PSR"), as set forth in his letter to the United States Probation Department, dated November 23, 2010.

A.    Individual Factual Objections

      The government hereby addresses the defendant's individual factual objections.

1.    Paragraph 24: John Franzese, Jr. testified on cross-examination that the loan to Joe Toursto was made in 2002. United States v. Franzese et al., 08 CR 240 (BMC), Trial Transcript ("Trial Tr.") at 536. In addition, co-defendant Joseph DiGorga stated in a recorded conversation with Franzese, Jr. in August 2005 that the Toursto loanshark loan had been extended three years earlier. Government Exhibit ("GX") 117. In any event, it is immaterial if the loan was actually made in 2003, as the defendant implied on cross-examination. Trial Tr. 537-538. Thus, to avoid needless litigation, the government respectfully suggests that paragraph 24 of the PSR be amended to state that "In or about and between 2002 or 2003, both dates being approximate and inclusive, Franzese conspired with DiGorga to make and

did make an extortionate extension of credit to Joe Toursto."

2. Paragraphs 25, 63: The PSR accurately quotes the relevant evidence. At Trial Tr. 364, Franzese, Jr. testified as follows with respect to the consensual recording admitted into evidence as GX 117:

> Q [W]hen Joseph DiGorga says . . . "Take care of that because I've got a piece of that." Who did you understand the Defendant Joseph DiGorga to be referring to when he said take care of it?
> A My father.
> Q What did it mean -- what was your understanding what it means to have a piece?
> A That he was owed -- that he was like a partner.
> Q Who was a partner in what?
> A My father in Joe Toursto's business. . . .
> Q What did you understand it to mean when the Defendant Joseph DiGorga said, "The way it broke down is that I gave it to him for a point because I was giving the old man money"?
> A He was giving part of that point to my father.

3. Paragraph 28: The following sentence is incorrect and should be stricken: "The Government informed that he nonetheless instructed Catapano and DiGorga how to extort money from his prison cell."

4. Paragraph 30: Franzese, Jr. testified that Colombo family captain Michael Catapano (Franzese's nephew) held at least a portion of the Cujini Due extortion proceeds for the defendant while the defendant was incarcerated (Trial Tr. 371). It is thus reasonable to infer from this recording that, based on the defendant's senior position in the Colombo family and his relationship with Catapano, among other things, he would have been paid back.

5. Paragraph 31: There was extensive evidence, in the form of consensual recordings, the testimony of Franzese, Jr., and the testimony of expert witness John Carillo (Trial Tr. 95, 115), that extortionate activity is characterized by the threat of violence. Thus, even if Catapano did not inform the defendant of his specific plans to verbally threaten the Franzella brothers prior to making those threats, there is proof by at least a preponderance of the evidence that the defendant consented generally to the use of such tactics.

6.   Paragraphs 35, 64: Various consensual recordings introduced at trial (GX 111, 117), as well as Franzese, Jr.'s testimony, established the defendant's involvement in the Cujini Due extortion by a preponderance of the evidence:

>   Q What did the Defendant Franzese tell you about the dispute?
>   A That Tony beat up Angelo in front of his son and that they were also -- there was another restaurant that they were both going to open on Willis Avenue, and Tony was going to throw Angelo out of both places.
>   Q What, if anything, did the Defendant Franzese tell you about why he got involved in the dispute?
>   A Angelo needed help.
>   Q Did you ever have any discussions with Angelo about this issue?
>   A Yes, I did.
>   Q What did he say tell you?
>   A <u>He told me how much my father helped him</u>, Michael [Catapano] and Joseph D [DiGorga], and that he was very thankful.

Trial Tr. 369-370 (emphasis added).

7.   Paragraph 39: Franzese, Jr. testified that the defendant devised the Hustler extortion scheme insofar as he planned to offer the owners of the Hustler club protection against the Genovese organized crime family, and that he planned to receive $30,000 a month in protection money:

>   Q Did you have discussions with Michael Catapano and Defendant Franzese and Joseph DiGorga about what they owed you money for?
>   A Yes.
>   Q What did you understand the Hustler Club to owe you money for? . . .
>   A There were two guys in Connecticut that they were afraid of and that claimed to be connected to the déjà vu. And at some point Michael [Catapano] and Tommy Gioeli had went and had a meeting with these two fellows that were captains supposedly in the Genovese Family.  And we won the decision – and <u>Michael and my father</u> won that decision. . . .
>   Q Do you recall discussions with Defendant Franzese and the defendant Joseph DiGorga and Michael Catapano about how much money the Hustler Club was to pay? . . .
>   A That they were to get paid about $30,000 a month.

Trial Tr. 313-315 (emphasis added).

3

8.  Paragraphs 52, 54, 67: FBI Special Agent Vincent D'Agostino testified on cross-examination that the defendant gave $7,000 intended for the Vincent Michaels extortionate extension of credit to Joe Bosco, who in turn gave it to cooperating witness Gaetano Fatato, when then gave it to Michaels:

    > Q Mr. Franzese never gave Mr. Fatato any money in relationship to Vinny Michaels, isn't that correct?
    > A No.  It's incorrect.
    > Q When did he give him that money?
    > A On the date -- the day before when he received that money from an intermediary, that money was from your client.
    >     MR. LIND: Judge, that's hearsay.
    > A You --
    >     THE COURT: You asked him the question.
    > Q Who was that intermediary, by the way?
    > A You want his name?
    > Q Yes.
    > A I believe it was Joseph Bosco.

Trial Tr. 1281-1282.  As to paragraph 67 of the PSR, the government agrees that the evidence did not show that Christopher Curanovic delivered every single payment he received from Michaels to the defendant.  This error, however, is immaterial because Franzese clearly was receiving Michaels' payments via Fatato, as described above.  Moreover, in one consensual recording introduced at trial, Fatato can be heard counting out $800 in cash, which he received from Michaels, and giving it to the defendant.  GX 223.

9.  Paragraphs 56-59, 68: There can be no dispute as to the content of the consensual recordings regarding the defendant's involvement in the Beauty by Andre extortion. Paragraph 59 of the PSR, for example, accurately quotes the defendant's statements about his role in the extortion, as captured in GX 100.  See also Trial Tr. 292 (testimony of Franzese, Jr. ("Q: And what did you understand him to mean when he said at line 31, 'Leave him on the floor?'" "A: Hurt him if you don't get the money.")).

10. Paragraph 60: The extent of these conversations with Fatato, and the level of gruesome detail described by the defendant, belie the defendant's assertion that he was merely engaging in "pathetic boasting."  See Government Sentencing Memorandum dated December 9, 2010.  In addition, Franzese tried to solicit his own son's murder when he learned that Franzese, Jr. was cooperating with the government (id.),

      further undermining his claim that his statements amounted to empty boasting.

11. Paragraph 65: It is reasonable to infer from the evidence presented at trial that in light of the defendant's position in the Colombo family and in the Hustler Club extortion conspiracy vis-a-vis DiGorga, the defendant did receive at least a portion of the more than $150,000 that DiGorga was paid.  For example, Franzese, Jr. testified about a conversation (GX 102) with the defendant and Catapano, in which the defendant expressed confidence that he would be paid from the Hustler club extortion:

> Q "They're going to do something for me. I ain't worried about that, Michael [Catapano]."  What do you understand Defendant Franzese to mean?
> A That there already was a deal where he would get money.
> Q That who would get money?
> A My father.

Trial Tr. 318.  Thus, the government respectfully submits that paragraph 65 should be amended to read, "DiGorga convinced the owners to employ him as a consultant, and was expected to share a portion of the money he received with Franzese."

B.    <u>Presentence Report Offense Level Calculation</u>

      Finally, the defendant objects to the various paragraphs in the PSR setting forth the offense level calculation.  His objection to each individual calculation is based on his objection to the application of the four-point role enhancement and two-point obstruction of justice enhancement, and that the Cujini Due acquitted conduct should not be included in the offense level calculation.  For the reasons set forth above (as to the Cujini Due extortion) and in the government's December 9, 2010 Sentencing Memorandum (as to the enhancements), the government respectfully submits that defendant's objections

5

are without merit and should be rejected, and that the Probation Department's advisory Guidelines range calculation of 151 to 188 months is correct.

                                            Respectfully submitted,

                                            LORETTA E. LYNCH
                                            United States Attorney

                             By:   /s/ Cristina M. Posa
                                            Cristina M. Posa
                                            Rachel J. Nash
                                            Assistant U.S. Attorneys

cc:   Richard B. Lind, Esq. (by ECF)
      Probation Officer Amrita Ashok (by email)